Next case is SMARTMETRIC v. AMERICAN EXPRESS. Mastercard and Visa, 2011-1473. And Mr. Bright, when you're ready. Thank you, Your Honor. Pardon my voice. I'm getting over a laryngitis, but I'll do the best I can. If I'm not audible, please tell me and I'll try to raise the volume. You may have pleased the court. This is a relatively narrow appeal of a Markman ruling by the district court. The district court had five terms presented for interpretation, elected to interpret four and not to interpret the fifth. And this appeal follows upon a stipulated judgment in which all of us agreed that the two of the terms would be reviewed in this court. Mr. Bright, the appellant's brief at 13, 14, and 17 asked the court to take judicial notice of five patents. Given what you just said, that this is on a stipulated judgment, is that appropriate? Because you stipulated to the claim construction based only on intrinsic evidence. True, we did. And the question of whether this court may consider this additional information is entirely within the court's discretion, as I understand the law as announced by the circuit. But I think the answer comes out to be exactly the same even if you ignore the additional information. The answer is still the same. I gave it to the court. Yeah, but that's not my question. My question was whether it was appropriate to raise those given that stipulation. I think so only because it's for information purposes and it makes no difference in the ultimate answer in my opinion. But if Your Honor wishes to ignore it, then please ignore it. Anyway, I started to say that there are just two terms that were the subject of our stipulated judgment. One of them has to do with the so-called triggering function of the claims. That's the insertion term? Yes, Your Honor. And the claim says insertion into. Yes. And the district court seized on the word into and said it must be that this claim can only refer to insertion of one thing inside the body of another. Well, you say seized on as if it sort of reached from out of space. It's a word into the claim and it seems like it's throughout the specification. So what was wrong about that? There's nothing wrong in seizing on it. It's the interpretation of it that's wrong. Because as I explained in my brief, insertion into can also refer to the placing of a contactless card into the field formed by a contactless card reader. In other words, waving something across a surface is within the meaning of insertion into? Yes. And the reason is that the reader forms a kind of a field. When you bring the card close to the reader, the card has no power in it. So the reader provides the power by forming a field. When you place your card near it, the card is inserted into that field and that powers the chip in the card and then the reader can read it. Otherwise, the reader can't read it. What's the meaning of in communication with as used elsewhere in that? Well, once you have a triggering, then you can have communication of information on the card. You have to first have triggering. In other words, you have to make a connection. After you make the connection, then you can have communication of any information on the card or, at least in theory, from the reader to the card as well. But that's used to describe information exchange without physical contact, right? No. The communication has to do with what happens after triggering. That's all. Once you trigger the connection between the card and the reader, the communication then ensues. In other words, communication isn't – insertion into is not equivalent to communication. Well, not exactly. Communication follows the insertion. Correct. In the context of this claim, that is correct. But, of course, a triggering can be thought of as a form of communication. I think this is what partially confused the district court. The district court thought that we were reading insertion, the triggering and communication to be one and the same. We weren't. We were saying, as the specification explains, the card – a contactless card triggers the connection. The claim says, is immediately triggered upon insertion into. Yes. So they are connected. They are connected. That's true because triggering is a form of communication. Triggering occurs by insertion into. Correct. The question is into what? In the case of a physical – of a contact card. Into the reader. Yes, the reader. In the case of a contact card, the card is placed inside a slot. In the case of a contactless card, which is disclosed throughout the specification, it occurs when you place a card close enough to the reader to get the triggering, which is caused by the field, the interaction of the field created by the reader. But that you always refer to as past near. In the specification, you refer to the contact as past near as opposed to inserted into. That's an explanation of how a contactless card works, Your Honor. You never refer to the contactless card as inserted into the reader in the specification. But you do use that language when referring to the embodiment where the card actually physically goes into the reader. And you use past near in the specification whenever you're referring to a contact. I see what Your Honor is saying. Past near. That's true, but it amounts to the same – I'm saying your description in the specification distinguishes the two, but you seem to have only claimed one. Well, that's the court – the district court's point is that we disclosed both but claimed only one. But the point that I made to the district court – the most important point, perhaps, is that if you look at the dependent claims, the dependent claims make clear that at least one of the species covered by the generic claims is a contactless card. Because only the contactless card is disclosed in our specification as the antenna in the card. And therefore, only a contactless card can trigger the communication between card and reader by placing the card in the field formed by the reader. You're referring to the communication interference in dependent claims 6, 7, 19, and 20? Right, Your Honor. Why does that necessarily mean that it's contactless and only past near? It's entirely possible you could insert it into a slot and still have within that slot the contactless RF communication type process. Right, that's the argument that my opponents make, that there's no disclosure to that effect in the patent. What there is a disclosure of, in fact, is the idea that – and if Your Honor would look at A38, A39, I'm sorry, which is one of the pages in the patent. Which patent? Column and line number? Yes, Your Honor. It's column 9. Column 9. And it says, beginning at line 28, it should be further appreciated that the smart card described herein does not have to be a contact smart card, but may in fact be a contactless smart card, wherein the user accesses the ISP-12 whenever the smart card 14, which in this example would have an antenna embedded within it, is passed near the reader. Now, I would also ask the Court to take a look at A37, which is column 5 of the patent, at line 66, where the patent says, it's to be understood that the invention disclosed and defined herein extends to all alternative combinations of two or more of the individual features mentioned or evident from the text or drawings. All these different combinations constitute various alternative aspects of the invention. But we're talking about claim 1 that has rather specific language, right? It has the word into specifically in the claim. That is the word that the district court says the entire interpretation turns on. And the Court said that because the Court said if the patentee wished to claim the contactless card, he must have done, he had to do so more clearly. And as I say in my opening brief, this stands the Phillips principles on its head. Phillips says that there has to be a clear disclaimer, not a clear claimer. But the disclosure of contactless is very specific. If it had been intended that insertion into include contactless, why wasn't there a claim that says contactless? I can't answer your question, Your Honor, because there's no way of knowing. That's a pure speculation question. But neither is there a claim that calls for a contact card in so many words. The fact of the matter is perhaps the language could have been drawn a little bit better, I grant you. But the fact of the matter also is that both broad claims have a dependent claim which calls for a contactless card. And therefore, the broad claim must be generic to it. The patent office allowed it, allowed this claim on first action without limiting the scope of the claim in any way, shape, or form. But the plain meaning of insertion into is certainly to put in. So that's the plain meaning. So you're asking us to deviate from the plain meaning of the claim. And wouldn't you then have to have something akin to lexicography or like, as in the clear disclaimer, something that says don't use the plain meaning, Your Honor? In my specification, I clearly define this as broader than the plain meaning. Your Honor, if you take the position that the word into… Insertion into. I know, but… Insertion into. A contactless card. No, that's not just into. That's inserting into. Yes, but I've already said to Your Honor, and there is no dispute about this, that a contactless card is inserted into a field formed by the reader. So the use of the term insertion into is perfectly logical in that context. Insertion into said data card reader, not said field created by said data card reader, but insertion into said data card reader. Well, all right. Let us assume for the sake of this argument that you take that to be the plain meaning. The district court did. There's no two ways about it. So then how are we to read the dependent claims which call for a species of contactless card out of the claim? I submit to Your Honor that that is the opposite of a clear disclaimer, and the Phillips principle is… No, no, that's claim differentiation. That's not the opposite of a clear disclaimer. It's just claim differentiation, and Toro, one of our leading cases, says in the face of plain meaning or something like that and the dependent claim, I mean, you have to go with the meaning of the term. But I submit to Your Honor that that reading, in effect, deprives the patentee of something he disclosed and claimed, perhaps imperfectly in retrospect. You didn't prosecute the patent, did you? No, of course not. So it seems to me that maybe the prosecutor deprived him of something he disclosed. He may have done, if you want to read it the way the district court did. But I submit to you that we're supposed to interpret claims broadly, not narrowly. Unless there's a disclaimer. Actually, counsel, we're not supposed to interpret claims broadly or narrowly. We're supposed to interpret them according to their plain meaning. That's true. Neither broad nor narrow, but rather plain. Okay. I've tried to explain in my briefs and in my argument here today why insertion into applies to the passing of a contactless card. Let me ask you this, please, before you're gone. And that is, figure three of the patent depicts a system, and item 14 is a smart card, which is inserted into the recess 16 of the card reader 18. And that doesn't look like passing near. We have no argument that that is an example of a contact card. There's no dispute. That's an example of a contact card. It's also an example of an insertion into. Yes, of course it is. But my point is the claim is broad enough to cover both or either. That's my point. That was my point below. It's my point here. If you say that insertion into, because of the words insertion and into, ends the entire inquiry and I don't have to look at anything else, then I guess you do reach the conclusion. You can reach the conclusion the district court reached. Mr. Brake, you wanted to save five minutes. You have that. I just want to spend one minute on the other term, if I may, Your Honor. That is the network. The claim says network unadorned by any adjective of limitation or modification, like public or private. The district court reads the term public into the claim. And if you look at the district court's order, there's just about one page on the subject. She cites the one example and specification of a public network and therefore says our claim is therefore limited to public even though it does not contain the word public. That makes no sense at all. If we thought you were possibly correct on that point but possibly not correct on the first one, should we address that second point? Are there other cases in which this issue hinges? Because my understanding is either of these would alternatively be an affirmative. In this case, our stipulation says that it would be dispositive in this case. But to answer your question directly, we would ask you to interpret the second term as well because there is much more to follow, much more in play than just the issues that were presented in a limited way of the district court. After all, the district court had nothing on the infringing system at all, nothing, just the intrinsic evidence on claim interpretation. But this is summary judgment of non-infringement. Not summary judgment, Your Honor. But not summary judgment. Claim interpretation. Okay. And then you stipulated. Yes, we stipulated. But you stipulated on the basis of both terms. So if we affirm the district court on one of the two, you're done, right? That remains to be seen on remand. But the way we stipulated to it, it does look that way. But you asked me directly would it be important for this panel to interpret the other phrase. Answer, yes. Yes, because it may well have implications down the road, and otherwise we'll be back here again on a point this panel could decide. Thank you, Mr. Bright. You're welcome. We'll give you two minutes of rebuttal even though you've consumed most of it. Thank you, Your Honor. Mr. Aminio, you're taking seven minutes? Yes, Your Honor. Thank you, Your Honor. May it please the Court. I'm going to limit my comments just to the insertion into claim term. And I wanted to pick up exactly with the point Judge Moore made. His insertion into has a plain and ordinary meaning, and that's what the district court relied on in adopting the construction in this case. It's very clear from the district court's decision at page A52 in the record where the district court says, quote, the court finds that the ordinary meaning of insertion is readily apparent, close quote. And then the court goes on to mention that although the DiGiorgio patent utilizes the phrase insertion to mean placing an object on or against, the court finds that the phrase insertion into, utilized by the 464 patent, denotes placing one object inside of another. So this is a phrase that has a plain meaning. This plain meaning is exactly what the district court relied upon to adopt the construction that is dispositive here. But Mr. Bright talks about dependent claims. Yes. I think he means communication claims like Claim 6. That's exactly right, Your Honor. There are dependent claims, but those dependent claims, as Your Honor points out, like Claim 6, talk specifically about and narrow the communications interface aspect. The communications interface aspect was added, and Claim 6 is actually double dependent to Claim 5 and then to Claim 1. The communications interface aspect was added in Claim 5, which is dependent on Claim 1. So there is a discussion that the communications interface could be contactless or could be contact. That would be an appropriate analysis of claim differentiation. But neither Claim 6 nor Claim 7, nor the later occurrence of the dependent claims 19 and 20, speak about the immediately triggering upon insertion of the data card into the data card reader. So there are dependent claims, but they don't speak to the limitation at issue here, the immediately triggering upon insertion of the data card. In other words, the communication occurs after the insertion. Absolutely correct, Your Honor. It talks about communication, which is a separate limitation in the claims, and that's really where SmartMetric ran into problems. They kept trying to conflate the communication step with the insertion into step, and they can't be conflated. Number one, there are separate limitations in the claims with separate language. And this Court has said, when you use different language, we presume that it means different things. Moreover, if they say insertion of the data card into the data card reader is just communication, that would read out the insertion into limitation. And this Court has explained many times you can't read out a claim limitation. And I think what's very clear, as Judge Wallach pointed out, if you look at Figure 3, that very clearly describes an insertion of a data card into a data card reader. There's even a dotted line that shows a recess in the data card reader. And the applicant themselves in claim, excuse me, Column 9, the paragraph from lines 28 to 35, distinguishes communication when the data card is passed near. And Judge Moore made this point very clearly. The applicant themselves distinguished passing the data card near the reader versus inserting it in. And what SmartMetric is trying to do by construction is to erase that very clear distinction in the specification. And there was a few questions from the panel. Why didn't applicant claim a card that both communicated contactlessly and triggered contactlessly? And the answer to that, I would submit, is they tried to. If we look in the record at page A108, original claim 28 was to a data card that communicated contactlessly and had immediate triggering when said data card is in communication with a data card reader. That was original claim 28 on page A108. And what happened in prosecution is the patent office came back and at pages A112 and 113 and said we reject claim 28 over the DiGiorgio patent. And they specifically go through the steps of what DiGiorgio shows. Also informative, the only other claims in the original application, claims 14 and 27, and those are at page A105 and A108, the only other claims that didn't require insertion for immediate triggering, they were rejected too. And what then happened in prosecution, A124 and A125, applicant canceled the claims. It couldn't be more clear. This automatic triggering via mere communication is disclosed in the specification. There's no argument about that. It's in column 5, lines 39 to 45. It was attempted to be claimed. It was rejected over the prior art and canceled. It was at all times viewed differently as triggering by insertion into. It was prosecuted, attempted, rejected, canceled. The Schreiber-Schrock case from the Supreme Court and countless cases from this court have explained when you try in prosecution to capture something and you cannot because of the prior art, you can't then through claim construction of other claims go back and recapture that subject matter. I would respectfully submit that is what smart metrics is trying to do here. I would respectfully submit that the district court's adoption of the plain and ordinary meaning for the insertion to claim term should be affirmed. Unless the court has any questions, I would cede whatever time remains to my colleague. Thank you, Mr. Arminio. We'll hear Mr. Castanis. Thank you, Your Honor. We're talking about public versus private. Yes. You can talk about insertion if you want. Well, I think Mr. Arminio has pretty well covered that. I think Judge Wallach has recognized that the arguments that are being made with regard to that are arguments that are being supported by materials that weren't before the district court. And I'm not sure if it was mentioned in your comments to my friend on the other side, but this notion of an RFID field first appeared in this court, not before the district court. But with regard to the insertion into language, we otherwise rely entirely on what Counsel for American Express has said. Visa and MasterCard would like to spend our time addressing this district court's other independently case dispositive claim construction ruling, which is the plurality of network service providers aspect of the claim. I think it's worth starting, and this, Judge Moore, I think goes to your question, with the – actually, we could even start with the abstract on this issue. The abstract tells us that the patent is directed to, and I quote from the first sentence of the abstract, a computer system, 10, that allows a user to automatically access one of a plurality of internet service providers, which require information specific to the user and or the ISP-12 to be accessed. We then turn to the first portion of Column 1. This is on page 835, where the patent is said under technical field, the present invention relates to a computer system that allows a user to automatically connect to a network service provider, and more particularly to a system and method which allows a user to automatically connect to a network service provider by using a data card, i.e. a smart card. And then when you go to Column 2, at the first part of the disclosure of the invention, you see that the present invention is directed to overcoming the problems in the prior art. I'm sorry, what column are we on? I'm sorry, Column 2, line 39 is where I'm starting, immediately under disclosure of the invention. The present invention is directed to overcoming the problems in the prior art, regarding the inconvenience of the user having to physically search for the local ISP number in the particular locale in which he or she is located, or the increased cost in paying for a long-distance call if the search is not performed, or the delays in time it takes for a user to access the internet when the user is in a different geographic location or happens to use a different computer. The point of me reading all of these portions, and I could go on and read more out of the specification to you, is that this patent is directed to accessing the internet. Now the term that the patentee chose in the claims is the term network service provider. What does that mean? Well, we know from Column 4 that the patentee says, quote, typically the network service provider is an internet service provider, ISP, or an internet access provider. Now as I understand the difference between those, internet access, pure access to the backbone internet service is a little more than that. Maybe the sort of thing that AOL provides or used to provide with their dial-up service. Then it goes on to say, after saying that the ISP or the IAP provide internet services to the user, alternatively the network service provider might be a proxy server of an intranet. And here is where my friend on the other side hangs a lot of the weight of their argument, and they say, well, that means it can be a private network also that you're accessing. But the answer is, in the light of the specification, that can't be the case. What this is referring to, this proxy server idea, is the notion that when I, for example, at my law firm, log on to my computer on my desktop, I'm logged on to a private network that's secure from the outside. But when I want to get to the intranet, well, that proxy server is sitting inside my firewall, and that's what allows me to get to an intranet page. And that, by the way, also explains the language that my friend uses with regard, relies on with regard to the bank web page. The idea there is that, I believe that's in Column 9. Column 9 of the patent refers to the possibility that the issuer of the smart card may be a bank. Now, Mr. Castaneda, you agree that the words network service provider are not synonymous with internet service provider because they're clearly defined to be broader than that, right? Well, I think they're clearly defined. I think the answer is yes, it's broader than internet service provider. Rather than so eloquently, undoubtedly you recognize that it clearly defines network service provider as both encapsulating an ISP or an intranet. You agree with that, right? Specifically, the language is the proxy server of an intranet. So you recognize it's broader than an ISP, correct? That's correct. Okay. Now, it's broader than an ISP and includes a proxy server of an intranet. Now, that has plain meaning to people of skill in the art, no doubt. And yet you would like us to interpret it as something akin to what you use in your law firm with a firewall as opposed to just any intranet. I mean, I don't see any support in this patent for your firewall notion as distinct from the plain meaning of this could also be used in an intranet, any old intranet, the court's intranet, any company's intranet. I don't see where your law firm's version of a firewall is necessarily imported as a limitation. I use that simply as an example of where the proxy server typically sits. But that's an example of one type of proxy server and how it would operate. But I don't see anything in this patent that includes the limitation along those lines. I would turn it around and say I don't see anything in this patent that suggests that you can go to, that you're trying to get to anything other than the intranet. Sure, it's the language that says proxy server of an intranet. Yes, but which way is that going? Is that going out to the intranet or is that going in? It doesn't answer it. Wouldn't one of the people in the art be able to figure that out? I think one of the people in the art reading this patent would figure it out by reference to the first portions of the patent that I read to you. Well, one of the people in the art would figure it out, but they wouldn't limit it to an ISP. Oh, I think they would because if you look at, again, going back to column two, where I read you under the disclosure of invention, it starts with the present invention. Oh, well, there's no doubt and I imagine that you're— Is directed to what? To getting access to the ISP. I'm sorry. I didn't mean to step on you. I'm sorry. I imagine that your opponent would acknowledge and accept the idea that the invention is generally directed towards communication with an ISP, but that he believes the specification discloses an alternative which is broader than that. I'm sure that's what he believes, but I think the problem with this is the claim writer and the patent writer told us that this is the present invention. Let's go to your first thing, the claim writer. What did the claim writer tell us? The claim writer told us— He didn't choose the words ISP despite the fact that they are throughout the specification if you count the number of times he tells us, no doubt, but he didn't choose to use that limitation. He chose to use something broader, clearly. Right, and that also encompasses the IAP, and it also encompasses the proxy server that gets you as an intermediary to those things. No, not gets you to those things. Gets you to an intranet as distinct from those things. Well, I don't think— Really, because you read it. You read it so eloquently. I appreciate the compliment, Your Honor. Why be a proxy server of an intranet? I appreciate the compliment, Your Honor, but with respect to the language, the proxy server of the intranet, and we're looking again here at column four. Let me just make sure I can put my hands on it here. It says the network service provider is an intranet service provider or an IAP, and then it says alternatively, the network service provider might be a proxy server of an intranet. In other words, you're saying you get to an intranet from the intranet? You don't get to it from the intranet. That's how you get to the intranet, from your internal network, which is what the intranet is referring to here. And when you go back to column one and read—or column two, excuse me, and read what the present invention is directed to and read that all of this is about making it easy for the person on the road who's outside of his long-distance area to dial up— Hold on, Mr. Knauss. You want me to go back to column one? Well, what you read there was the present invention relates to a computer system that allows a user to automatically connect to a network service provider. And if you go down a little bit farther in that same column, you will see it talking under background art at line 30 about commercial transactions which have been taking place over open networks such as the intranet. That's the same as the district court's conclusion. Such as the intranet, Mr. Knauss. You're reading to us something that says the present invention relates to a network service provider. Then you read something that says a network service provider is an ISP, an IAP, or an intranet, and somehow you want us to use those two sentences in combination to narrow the word network service provider. Actually, Judge Moore, what I want you to do is I want you to look under disclosure of the invention at column two where it says the present invention is directed to access to ISP. It's directed to access to the intranet. Now, I'm over my time, but there's one last procedural question that I wanted to answer and that also came from you, Judge Moore, and that is what do we have to do with this case if you agree with the first issue and disagree on the one we've just been debating. And I think affirmance of the judgment, you know, in fact, we've been tasked for asking this court if you disagree with both of those things not to reach the other issues. Yeah, but there's a related case that's noted in the inside, and so both these issues are thoroughly briefed and argued to the parties, and it seems to me that even if we were going to affirm on one, it would maybe make logical sense to reach both since they're fully vetted by very good counsel on both sides. Well, I think if that's the case, then certainly the court has the discretion to write whatever opinion it wants to for the same reasons that we think that the court should also reach the other three issues that Mr. Bright says we should have cross-appealed. Those weren't addressed below. I'm sorry? The difference is those were not addressed below. Actually, all three of them were addressed below. They don't form the basis for any judgments on appeal. They don't form the basis for the judgment, but at the same time, I want to make sure that the court understands we could not have cross-appealed from a judgment that was completely in our favor. That's the argument that's made against us. So if there's going to be guidance being provided for this next case, and we think, by the way, that should go away on res judicata grounds, but if there's going to be guidance provided for us on that next case, then the guidance ought to be complete, and that would be what we'd request from the court. Thank you for letting me go over my time. Thank you, Mr. Stanius. Mr. Bright, we'll give you three minutes. Thank you, Your Honor. Just a couple things quickly. Back to insertion. The specification says, passing near to the reader, means exactly the same thing as inserting the card into the field formed by the reader. It's exactly the same thing, because when you pass the card near, you insert it into the field. That's the first thing I would say to you. What my opponent has said about file history is irrelevant to this appeal because the claim that was canceled was to the card only, not to the system. It had nothing to do with the system. Nothing. And on the network question, the claim itself doesn't say public or private. It doesn't have a qualifier or modifier in it. If I understand the Phillips rules correctly, the first step is to read the rule, read the claim language, and see if it is modified or qualified. It is not. Then you can look at the specification and see if that qualifies. It does not. And finally, the file history, and that does not. So that's why I think we're right and they're wrong. And on the other points, they should have crossed the field if they wanted the court to take jurisdiction over it, because those interpretations have nothing to do with the stipulated judgment on the two issues. Thank you. Thank you, Mr. Bright. The case will be taken under advisement.